**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Case No.        02-50852 (JJT) |
| | ) | Case No.        02-51167 (JJT) |
| FIRST CONNECTICUT CONSULTING | ) | (Jointly Administered) |
| GROUP, INC., et al., | ) | |
| | ) | |
| Debtors. | ) | Chapter        7 |
| | ) | |
| RICHARD M. COAN, TRUSTEE, and | ) | |
| RONALD I. CHORCHES, TRUSTEE, | ) | |
| | ) | Adv. Pro. Case No. 09-05010 (JJT) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Re: ECF No.        335, 376 |
| JAMES J. LICATA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION AND ORDER**
**DENYING DEFENDANT'S MOTION TO DISMISS COMPLAINT**

**I.    INTRODUCTION**

There comes a time when the twists and turns of a case are so numerous that it can be best described as a modern-day *Odyssey* — the present matter is one such case. This Adversary Proceeding has its origins in the June 2005 sale of substantially all the Debtors' assets in the jointly administered bankruptcy cases of James J. Licata and First Connecticut Consulting Group, Inc. Nearly four years after that sale, Chapter 7 Trustees Ronald I. Chorches and Richard M. Coan (together, the "Trustees") commenced this Adversary Proceeding against James J. Licata ("James Licata"), his wife Cynthia Licata, their children Jessica Licata and Tucker Licata, and a tangled web of related business entities. The Trustees allege that the Defendants fraudulently used the sale as a vehicle for transferring valuable real estate-related rights from one

Defendant to another in service of a complex and long-running scheme to shield those assets from creditors.[1]

Now before the Court is Jessica Licata's Motion to Dismiss Counts Nine, Ten, and Eleven (ECF No. 335, the "Motion") of the Trustees' Amended and Supplemental Complaint (ECF No. 261, the "Amended Complaint").  She moves to dismiss these Counts under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that follow, the Motion to Dismiss is denied.

## II.    JURISDICTION

The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) (case administration) and (H) (proceedings to determine, avoid, or recover fraudulent conveyances).  The Court has the power to enter a final judgment in this Adversary Proceeding, subject to traditional rights of appeal.  This Adversary Proceeding arises under the Bankruptcy Case (as defined in Part III(A)), and venue is proper pursuant to 28 U.S.C. § 1409.

## III.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A.  Background and Factual Allegations

On June 27, 2002, James Licata filed a petition for relief under Chapter 11 of the Bankruptcy Code.  BR-ECF No. 1, Case No. 02-51167 (the "Licata Bankruptcy").  On July 12, 2002, First Connecticut Consulting Group, Inc. ("FCCG", and together with James Licata, the "Debtors") also filed a petition for relief under Chapter 11 of the Bankruptcy Code.  BR-ECF

---

[1] The Trustees' allegations raise serious concerns as to whether James Licata and Cynthia Licata have perpetrated a massive fraud upon both the Court and their creditors.  Those allegations have been the subject of a separate summary judgment proceeding before this Court.  *See* Mem. of Decision and Order Den. Defs.' Mot. for Summ. J., ECF No. 478.

No. 1, Case No. 02-50852 (the "FCCG Bankruptcy", and together with the Licata Bankruptcy, the "Bankruptcy Case").[2]

On March 11, 2005, the Debtors sought approval from the Court to sell substantially all their assets under 11 U.S.C. § 363.  Am. Compl. ¶ 12.  Pursuant to that certain First Amended Asset Purchase Agreement, filed with the Court on May 19, 2005 (ECF No. 671, the "FAAPA"), the Debtors agreed to transfer their claims to ownership interests in certain limited liability companies, mortgages, joint venture agreements, causes of action against third parties, and other enumerated assets (the "Assets") to SWJ Holdings, LLC ("SWJ").  Am. Compl. ¶ 15.  On June 21, 2005, the Court approved the proposed sale for $5.5 million (the "Sale" or "Sale Order").  BR-ECF No. 716, Case No. 02-50852.  The Trustees allege that the sole Asset of any substantial value was the Debtors' purported interests and rights in Defendant First Connecticut Holding Group LLC, IV ("FCHG IV").  Am Compl. ¶ 41.

FCHG IV itself had been mired in litigation both before and throughout the Bankruptcy Case — in some ways, FCHG IV's own history could well be considered the *Iliad* to the *Odyssey* that is this Adversary Proceeding.  In April 1999, Peter Mocco ("Mocco"), a spurned former business partner of James Licata, filed an action against James Licata to compel the conveyance of FCHG IV's real estate properties.  *See Mocco v. Licata*, No. A-5041-14T2, 2018 WL 2923483, at *2 (N.J. Super Ct. App. Div. June 5, 2018) (per curiam).  Mocco claimed that pursuant to an undisclosed agreement between himself and James Licata, the latter was to re-convey certain of Mocco's properties, including those held by FCHG IV, after taking title to those properties to facilitate Mocco's own bankruptcy reorganization.  *Id.* at *1.  After a lengthy

---

[2] The Licata Bankruptcy and the FCCG Bankruptcy were consolidated into one jointly administered case on December 30, 2002, with Richard M. Coan and Bonnie C. Mangan as Trustees.  BR-ECF No. 86, Case No. 02-50852.  That consolidated case was converted to a Chapter 7 proceeding on June 28, 2006.  BR-ECF No. 1073, Case No. 02-50852.

trial between 2014-2015, a New Jersey trial court found that Mocco, not James Licata, was the true owner of FCHG IV and its properties — that finding was later affirmed by the New Jersey Superior Court's Appellate Division. *Id.* at *2. As a consequence, the Trustees contend that James Licata's conduct throughout the Bankruptcy Case was designed to insulate certain assets not only from his creditors, but also from their rightful owner, Peter Mocco. *See* Pls.' Mem. in Opp'n to Mot. to Dismiss 3, ECF No. 376 (the "Reply").

Although Cynthia Licata claimed at the time of the Sale that she was the sole owner of FCHG IV, the Trustees allege that this was in fact a knowing and fraudulent misrepresentation made to conceal James Licata's rights in and equitable ownership of FCHG IV. Am. Compl. ¶¶ 45–47. Based on the Debtors' representations, the Sale Order stated that SWJ was not an insider of the Debtors and was completely unrelated to the Debtors. Am. Compl. ¶ 22. The Sale Order also references a Transfer, Settlement and Release Agreement (the "TSRA") (found in Exhibit H of the FAAPA) between Cynthia Licata and SWJ. Am. Compl. ¶ 22. The Trustees allege that no party to the Bankruptcy Case ever advised the Court that James Licata had previously claimed an interest in SWJ. Am. Compl. ¶ 22. The Trustees further allege that neither the Debtors nor any related parties ever advised the Court that the combined operative effect of the FAAPA and the TSRA would enable SWJ to serve as a pass-through entity and allow James Licata to transfer a substantial portion of the Assets to Cynthia Licata, including FCHG IV and its holdings. Am Compl. ¶ 23 (those assets, the "Pass-Through Assets"). As a result of this sleight of hand, SWJ did not pay any value for the Pass-Through Assets. Am Compl. ¶ 23. SWJ transferred FCHG IV to Cynthia Licata contemporaneously with the closing of the FAAPA. Am Compl. ¶ 23.

On May 26, 2006, just over two months after the Sale, FCHG IV allegedly sold the real estate it held to SWJ for a purchase price of $31.3 million by way of deed, which was recorded

on June 2, 2006 (the "SWJ Transfer").  Am Compl. ¶ 48.  The SWJ Transfer was later nullified

by the New Jersey trial court.  *Mocco*, 2018 WL 2923483, at *2.  At the closing of the SWJ

Transfer, FCHG IV received a mortgage (the "Second Mortgage") on the subject real estate in

the original principal amount of $22,950,833.50 and approximately $1,678,566.50 in cash.  Am.

Compl. ¶ 49.  Certain loan proceeds related to the SWJ Transfer were also placed in an escrow

account.  Am. Compl. ¶ 50.  The Trustees allege that the Second Mortgage was a product or a

proceed of the Pass-Through Assets, and further allege that Cynthia Licata received $380,000.00

from the associated escrow account.  Am. Compl. ¶¶ 49–50.  FCHG IV is then alleged to have

transferred the Second Mortgage to Defendant East Coast Investments, LLC ("East Coast"),

whose principals are purported to have been former attorneys of James Licata during a prior

criminal prosecution.  Am Compl. ¶¶ 51–52.

After FCHG IV transferred the Second Mortgage to East Coast, a dispute arose over its

validity and/or enforceability, which in turn triggered a claim against a title insurance company

(the "Title Claim").  Am. Compl. ¶ 88.  James Licata allegedly marketed and monetized the Title

Claim to obtain significant funds for his and Cynthia Licata's benefit by way of an Assignment

and Buyback Agreement between himself and Larry D. Kelley of Portland, Oregon (those funds,

the "Portland Funds").  Am. Compl. ¶ 89.  Cynthia Licata (and to some extent James Licata) is

alleged to have thereafter maintained control over the Portland Funds by placing them in certain

bank accounts held by Jessica Licata at JPMorgan Chase Bank, N.A. (the "Jessica Licata

Accounts"), thus shielding the Portland Funds from creditors.  Am. Compl. ¶¶ 90–92.  Jessica

Licata allegedly understood that the funds held in these accounts did not belong to her and were

held for the benefit of James Licata and Cynthia Licata.  Am. Compl. ¶¶ 90–92.  Cynthia Licata

allegedly held a debit card and checks for one or more of the Jessica Licata Accounts, and

controlled the movement of funds into, out of, and between the Jessica Licata Accounts by instructing Jessica Licata to execute desired transactions. Am. Compl. ¶¶ 90–92. Cynthia Licata then used the Jessica Licata Accounts to conduct business, fund a lavish lifestyle, and support her adult children for several years. Am. Compl. ¶¶ 91–92.

The Trustees allege that Cynthia Licata later decided to stop using the Jessica Licata Accounts in favor of a substitute scheme. Am. Compl. ¶ 93. Cynthia Licata created a new entity called Santa Fe Development, LLC ("Santa Fe Development"), a New Jersey limited liability company, to serve the same function as the Jessica Licata Accounts. Am. Compl. ¶ 93. After transferring the remaining funds in the Jessica Licata Accounts to Santa Fe Development's newly created accounts (the "Santa Fe Accounts", and together with the Jessica Licata Accounts, the "Accounts"), James Licata and Cynthia Licata obtained debit cards and checks for the Santa Fe Accounts and continued to use those funds to engage in business transactions and support their lavish lifestyle. Am. Compl. ¶¶ 94–96.

Allegedly, Santa Fe Development was structured to have nominal individual members serve as the beneficial holders of a substantial majority of its membership interests. Am. Compl. ¶ 97. Those members included Defendants Jessica Licata, Michael Lander, and Natasha Yeoh, as well as a trust created for the benefit of James Licata and Cynthia Licata. Am. Compl. ¶ 97. The Trustees claim that this trust is yet another vehicle to avoid legal title resting directly in the names of either James Licata or Cynthia Licata and to further advance their asset-shielding scheme. Am. Compl. ¶ 98. The Trustees contend that James Licata and Cynthia Licata are the equitable owners of the Accounts, and that the funds in those Accounts are in fact the joint property holdings of James Licata and Cynthia Licata. Am. Compl. ¶¶ 99–102.

The Trustees further allege that Santa Fe Development was created shortly after the Trustees issued six notices of intent to serve post-judgment subpoenas aimed at discovering assets held by Cynthia Licata. Am. Compl. ¶ 98. Those assets could potentially satisfy a $1.6 million final judgment in favor of the Trustees rendered in a separate adversary proceeding in this Court against her (Case No. 03-05045). Am. Compl. ¶ 98. Under Santa Fe Development's operating agreement, it agrees to defend Jessica Licata against any and all claims, pay her legal fees, and hold her harmless and fully indemnify her against any and all claims from an outside party. Am. Compl. ¶ 98.

In addition to Santa Fe Development, the Trustees allege that James Licata and Cynthia Licata created other entities to advance their asset-shielding scheme. Those entities include, but are not limited to, Defendants Charter Holdings, LLC (which includes Defendants Michael Lander and/or Natasha Yeoh as nominal members), Knox Trucking, LLC (the nominal member of which is Defendant Jessica Licata), Santa Fe Holdings, LLC, and Mighty Seven Angels, LLC (collectively with Santa Fe Development, Charter Holdings, LLC, Knox Trucking, LLC, and Santa Fe Holdings, LLC, the "Company Defendants"). Am. Compl. ¶¶ 102, 109.

The Amended Complaint also contains specific allegations concerning significant purchases made by various members of the Licata family and associated business entities with funds held in the Accounts. In December 2016, Charter Holdings, LLC allegedly purchased a property in its name at 120 Candyce Drive in Osprey, Florida (the "Candyce Drive Property") for approximately $647,000.00. Am. Compl. ¶ 104. The purchase price was allegedly paid by means of a wire transfer from one of the Jessica Licata Accounts. Am. Compl. ¶104. The Candyce Drive Property is purportedly the home of Tucker Licata. Am. Compl. ¶104 The Trustees further allege that the Candyce Drive Property is listed as an asset on one or more

balance sheets of the Company Defendants, that Cynthia Licata oversees the finances of the

Company Defendants, and that she exercises control over the Company Defendants' bank

accounts, which includes the Accounts.  Am. Compl. ¶ 105.  The Candyce Drive Property was

thereafter transferred to Mighty Seven Angels, LLC, which is nominally owned by an unnamed

individual and holds title to the Candyce Drive Property for the benefit of James Licata and

Cynthia Licata.  Am. Compl. ¶ 106.

The Company Defendants' financial statements are claimed to show that Tucker Licata

received in excess of $800,000.00 from the Accounts.  Am. Compl. ¶ 107.  In 2018, $485,000.00

of funds sourced from the Jessica Licata Accounts were allegedly used to purchase a 58-foot

used Monterey Sport Fisherman yacht from Galati Yacht Sales, title of which was taken by

Tucker Licata.  Am. Compl. ¶ 108.

Based on the foregoing, the Trustees contend that James and Cynthia Licata are the joint

owners of the Company Defendants and their assets.  Am. Compl. ¶ 109.  The consequence of

these contentions, if proven, is that these assets either belong to the bankruptcy estates of the

Debtors or should be subject to the Trustees' post-judgment recovery efforts to collect on their

$1.6 million judgment against Cynthia Licata.

### B.  Procedural History: Overview

The Trustees commenced this Adversary Proceeding by way of Complaint on March 13,

2009, against James Licata, Cynthia Licata, East Coast, and FCHG IV.  Count One asserts a

claim against James Licata for breach of fiduciary duty to the bankruptcy estate; Counts Two

through Four assert claims against James Licata for intentional and constructive fraudulent

transfer of FCHG IV under Conn. Gen. Stat. 52-552e(a) (*see* Conn. Gen. Stat. 52-552a *et seq.*,

hereafter, "CUFTA"); Count Five asserts a claim against Cynthia Licata and East Coast for

unjust enrichment; Count Six asserts a claim for fraud on the Court and seeks relief from the Sale Order; and Count Seven purportedly asserts a claim against Cynthia Licata for aiding and abetting James Licata in perpetuating both his fraud upon the bankruptcy estate and the Court. James Licata, Cynthia Licata, and East Coast responded to the Complaint on February 10, 2010, in which they deny the allegations and plead several affirmative defenses.  Answer, ECF No. 75.

On September 3, 2021, the Trustees amended the Complaint to advance four additional counts and factual allegations and to add the Company Defendants, Natasha Yeoh, Michael Lander, and Jessica Licata as Defendants.  Counts Eight through Eleven of the Amended Complaint add considerable factual allegations describing James Licata and Cynthia Licata's acquisition of the Portland Funds and the numerous subsequent transfers that occurred as they moved those funds through the Accounts.  Specifically, Count Eight contains all the Trustees' new factual allegations related to the Portland Funds and asserts that James Licata and Cynthia Licata are the equitable owners of the Company Defendants.  It also asserts a claim of unjust enrichment against both Tucker Licata and the Company Defendants.

### C.  Procedural History: Claims Against Jessica Licata

Count Nine asserts a claim against James Licata, Cynthia Licata, Jessica Licata, Tucker Licata, and the Company Defendants (collectively, the "Licatas") of intentional fraudulent transfer under Conn. Gen. Stat. 52-552e(a)(1) for any and all property or monetary assets purchased by or transferred among the Company Defendants and Tucker Licata using funds from the Accounts (the "Disputed Transactions").  The Trustees allege that the Licatas are personally liable to the Trustees under CUFTA and 11 U.S.C. §§ 544(b) and 550.

Count Ten asserts a claim against the Licatas of constructive fraudulent transfer under CUFTA related to the lack of reasonably equivalent value received in exchange for the Disputed

Transactions.  Like Count Nine, the Trustees allege that the Company Defendants are personally liable to the Trustees under CUFTA and 11 U.S.C. §§ 544(b) and 550.

Count Eleven asserts a claim against the Licatas for constructive fraudulent transfer under CUFTA related to James and Cynthia Licata's alleged insolvency at the time of the Disputed Transactions.  Like Counts Nine and Ten, the Trustees allege that the Licatas are personally liable to the Trustees under CUFTA and 11 U.S.C. §§ 544(b) and 550.

As to Jessica Licata herself, the Trustees allege that "[a]s the holder of legal title to the Jessica Licata Accounts, defendant Jessica Licata also has personal liability for all of the monies that so flowed into and out of the Jessica Licata Accounts." Am. Compl. ¶¶ 122, 128, 134.

On November 22, 2021, Jessica Licata moved to dismiss Counts Nine, Ten, and Eleven of the Amended Complaint.  She argues that the Trustees have failed to state a cause of action for fraudulent transfer under Federal Rule of Civil Procedure 12(b)(6) and have failed to meet the heightened pleading requirements for fraud under Federal Rule of Civil Procedure 9(b). Mot. 4.

On January 3, 2022, the Trustees filed their Reply in opposition to the Motion.  After hearing oral arguments on the Motion on April 13 and 14, 2022, the Court took the matter under advisement.

## IV.    DISCUSSION

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6), made applicable to this Adversary Proceeding by Federal Rule of Bankruptcy Procedure 7012(b), allows a party to move to dismiss a cause of action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). To survive such a motion to dismiss, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A complaint "must [also] contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard "creates a 'two-pronged approach' based on '[t]wo working principles.'" *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) ("*Pension Benefit*") (alteration in original) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678).

First, "although a complaint need not include detailed factual allegations, it must provide 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.*  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).  "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [a court is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Second, "'[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "This 'facial plausibility' prong requires the plaintiff to plead facts 'allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 717–18 (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).  "Importantly, the complaint must demonstrate 'more than a sheer possibility that a defendant has

acted unlawfully.'" *Id.* at 718 (quoting *Iqbal*, 556 U.S. at 678). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (alteration in original).

### B. The Amended Complaint States a Claim for Recovery from Jessica Licata as a Subsequent Transferee under 11 U.S.C. § 550(a)(2)

Jessica Licata argues that the Trustees have failed to allege that she acted with any fraudulent intent in transferring any of the Portland Funds. Mot. 5. She further argues that the Trustees have failed to allege that she received or transferred any of the assets from any of the Accounts described in the Complaint. Mot. 5. Thus, Jessica Licata argues that the Trustees have failed to state a claim for actual or constructive fraudulent transfer under the Bankruptcy Code. *See* Mot. 5–6. The Trustees retort that Jessica Licata is a subsequent transferee of James Licata and Cynthia Licata's fraudulent transfers, since Jessica Licata received the Portland Funds once they were deposited into the Jessica Licata Accounts (regardless of the conditionality under which she received those funds). Reply 17.

As a threshold matter, this Court has previously found that the Trustees sufficiently stated a claim against James Licata and Cynthia Licata to avoid post-petition transfers under 11 U.S.C. § 549. Mem. of Decision and Order Den. Defs.' Mot. for Summ. J., ECF No. 478.

Once a trustee has avoided a transfer under 11 U.S.C. § 549, 11 U.S.C. § 550 in turn allows a trustee to recover the property (or the value of the property) that was transferred from any immediate or subsequent transferee of the initial transferee. *See* 11 U.S.C. § 550(a); *Berman v. Pavano (In re Goldberg)*, 623 B.R. 225, 242 (Bankr. D. Conn. 2020). A trustee may not,

however, recover from "a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or any immediate or mediate good faith transferee of such transferee." 11 U.S.C. § 550(b). That said, a trustee may still recover from the initial transferee of the debtor or an agent of the debtor, even where the initial transferee takes in good faith and for present fair equivalent value. 5 Collier on Bankruptcy ¶ 550.03 (16th ed. 2021).

"In determining whether a claim to recover fraudulent transfers from a subsequent transferee is adequately pled, the Court need only apply a Rule 8 analysis." *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec., LLC)*, 440 B.R. 243, 269 (Bankr. S.D.N.Y. 2010); *see also Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 317–18 (Bankr. S.D.N.Y. 1999) ("[R]ecovery under § 550(a) is not subject to a particularized pleading standard . . . ."). "As such, the Trustee must provide only a "short and plain statement of the claim showing that [he] is entitled to relief." *Picard*, 440 B.R. at 260 (citing Fed. R. Civ. P. 8(a)(2)).

Turning to the present Motion, the Trustees need not meet the heightened pleading standards for fraud under Federal Rule of Civil Procedure 9(b), as they seek recovery from Jessica Licata as a subsequent transferee. The Amended Complaint sets forth an elaborate asset-shielding artifice constructed by James Licata and Cynthia Licata and describes two main post-petition transfers: (1) their manipulation of the Sale in the Licata Bankruptcy, where James Licata fraudulently transferred his interest in FCHG IV to Cynthia Licata; and (2) their transfers of the proceeds from the monetized title insurance dispute related to real estate held by FCHG IV (i.e., the Portland Funds). The Amended Complaint clearly traces the path of the Portland Funds to Jessica Licata by alleging, with sufficient particularity, that Cynthia Licata transferred some or all of the Portland Funds into the Jessica Licata Accounts. Am. Compl. ¶¶ 90–91.

The Amended Complaint also alleges that Jessica Licata (at the direction of Cynthia Licata) transferred some or all of the Portland Funds from the Jessica Licata Accounts to the Santa Fe Accounts.  *See* Am. Compl. ¶¶ 90, 93.

Moreover, as a putative owner of Santa Fe Development, Jessica Licata allegedly retained control over the Portland Funds once they were deposited into the Santa Fe Accounts, and the Amended Complaint plausibly leaves open the possibility that some of the Portland Funds remain to this day in the Accounts.  *See* Am. Compl. ¶¶ 104, 108.  Additionally, the Trustees have plausibly alleged that Jessica Licata (at the direction of Cynthia Licata) transferred portions of the Portland Funds to Tucker Licata, and did so with sufficient particularity by identifying the general timeframe, amount, and property purchased through these transactions. *See* Am. Compl. ¶ 107.

Although the Trustees do not expressly articulate a theory of recovery against Jessica Licata as a subsequent transferee of the Portland Funds under 11 U.S.C. § 550(a), the factual allegations in the Complaint, if true, plausibly support such a claim under the traditional Rule 8(a)(2) pleading standard.  *See Stratton Oakmont*, 234 B.R. at 317–18 (courts can consider theories of recovery not articulated in a complaint, so long as there are facts alleged to support them); *Reisch-Elvin v. Provident Life & Acc. Ins. Co.*, 372 F. Supp. 2d 827, 832 (E.D. Va. 2005) (plaintiff's failure to specifically identify the provision permitting recovery is not fatal on a motion to dismiss for failure to state a claim).

### C.  The Amended Complaint States a Claim for Recovery Against Jessica Licata Under Conn. Gen. Stat. § 52-552i

Jessica Licata also attacks the Trustees' CUFTA claims by advancing the same argument through which she attacks the Trustees' federal claims.  *See supra* Part IV(B).  She alternatively

characterizes the Trustee's state law allegations against her as a claim for aiding and abetting a fraudulent transfer and argues that such a claim is not recognized under either Connecticut or New York law.  Mot. 6.  The Trustees in turn assert that Jessica Licata qualifies as a subsequent transferee under CUFTA.  *See* Reply 17–19.

The Trustees may avoid specified transfers under state law (i.e., CUFTA) and recover the proceeds for the bankruptcy estate.  *Katz v. Anderson* (*In re Anderson*), No. 17-3008, 2023 WL 2622564, at *6 (Bankr. D. Conn. Mar. 23, 2023) (citing 11 U.S.C. §§ 544(b)(1), 550).  Moreover, the Trustees may avoid certain transfers under CUFTA if they have the status and rights of a "creditor" whose claim arose "before the transaction was made."  *Id.* (citing *In re Carrozzella & Richardson*, 302 B.R. 415, 420 (Bankr. D. Conn. 2003)).  Put differently, the Trustees have "standing to bring a CUFTA claim if the record reveals there was at least one [creditor] whose claim arose prior" to the Licatas' various transactions cited in the Amended Complaint.  *Id.* (citations omitted) (internal quotation marks omitted).  The record of both the Licata Bankruptcy and the FCCG Bankruptcy reveal a multitude of creditors whose claims arose prior to the transfers the Trustees seek to avoid, including transfers of the Portland Funds — as such, the Court takes judicial notice of the proofs of claims filed in both bankruptcy cases.  The Trustees may therefore pursue theories of recovery against the Licatas under CUFTA.

CUFTA generally permits a trustee to avoid any transfer of an interest of the debtor in property that was made within four years of that transfer.  Conn. Gen. Stat. § 52-552j.  CUFTA classifies two types of fraudulent transfers: intentional fraudulent transfers under Conn. Gen. Stat. § 523-552e(a)(1) (transfer made "with actual intent to hinder, delay or defraud any creditor") and constructive fraudulent transfers, *see* Conn. Gen. Stat. § 52-552e(a)(2) (transfer made without debtor "receiving reasonably equivalent value in exchange, leaving debtor with

few assets or inability to pay debts); Conn. Gen. Stat. § 52-552f(a) (transfer made while debtor was insolvent or causing debtor to become insolvent and debtor did not receive reasonably equivalent value); Conn. Gen. Stat. § 52-552f(b) (transfer to insider of debtor when insider had reason to believe debtor was insolvent). Notably, a transfer does not fall under either classification unless that transfer was made by a debtor. Conn. Gen. Stat. §§ 52-552e(a)(1), 52-552f(a–b).

As pertains to subsequent transferees of fraudulent transfers, CUFTA provides that the trustee may recover a judgment for the value of the asset transferred against either the "first transferee of the asset" or "any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee." *See* Conn. Gen. Stat. § 52-552i(b). Notably, however, a trustee may only recover under Conn. Gen. Stat. § 52-552i(b) if the subject transfer was an intentional fraudulent transfer under Conn. Gen. Stat. § 52-552h(a)(1). *Id.*

The Amended Complaint clearly and unambiguously claims that James Licata (and Cynthia Licata) funneled the Portland Funds through the Accounts with the intent to hinder, delay, and defraud their creditors. Am. Compl. ¶¶ 117, 123, 129. In addition, the Trustees plead sufficient facts that, taken as true, would constitute a claim for intentional fraudulent transfer under Conn. Gen. Stat. § 52-552e. *See* Am. Compl. ¶¶ 89-120. Notably, no party to this Adversary Proceeding has once challenged that the Trustees have sufficiently stated a claim for intentional fraudulent transfers under CUFTA against either James Licata or Cynthia Licata. Consequently, the Trustees may pursue and have sufficiently stated their claim against Jessica Licata under Conn. Gen. Stat. § 52-552i(b) for the same reasons through which they may pursue her as a subsequent transferee under 11 U.S.C. § 550(a). *See supra* Part IV(B).

16

Lastly, Jessica Licata re-characterizes the Trustees' state law claims as a claim of aiding and abetting a fraudulent transfer, which she contends is unrecognized under both Connecticut and New York law.  Mot. 6.  At this procedural juncture, however, it would be inappropriate for the Court to address this contention, as Jessica Licata has insufficiently addressed the applicability of either New York or Connecticut law (or even New Jersey law, given the Licatas' significant contacts with that jurisdiction vis-à-vis their property holdings and associated transactions).  *See* Restatement (Second) of Conflict of Laws § 145 (Am. L. Inst. 1971).  Although each jurisdiction of course permits a cause of action for aiding and abetting various civil wrongs, *see, e.g.*, *Efthimiou v. Smith*, 268 Conn. 499, 505 (Conn. 2004) (Connecticut); *Oster v. Kirchner*, 77 A.D. 3d. 51, 55 (N.Y. App. Div. 2010) (New York); *Tarr v. Ciasulli*, 853 A.2d 921, 929 (N.J. 2004) (New Jersey), an absence of proper briefing on the proper choice of law and its import on the present Motion precludes the Court from further analyzing and adjudicating Jessica Licata's recharacterization of the Trustees' claim.[3]

### D.  Jessica Licata is a Necessary Party Under Rule 19(a)

Even if the Court were to find the Trustee's Amended Complaint deficient under Federal Rule of Civil Procedure 12(b)(6), Jessica Licata is nevertheless a necessary party to this Adversary Proceeding under Federal Rule of Civil Procedure 19(a), thus precluding her dismissal.

The Trustees argue that Jessica Licata is a critical figure in the Licatas' asset-shielding scheme because she willingly held legal title to the Accounts.  The Trustees seek to establish that Cynthia Licata (and, to some extent, James Licata) is the actual owner of those Accounts, and

---

[3] The Court is nonetheless skeptical of Jessica Licata's re-characterization of the Trustees' allegations as aiding and abetting a fraudulent transfer.  The allegations in the Amended Complaint clearly characterize Jessica Licata as more than a mere conduit of her parents' asset-shielding scheme — rather, they clearly characterize her as a subsequent transferee of the Portland Funds and plead more than sufficient facts in making that characterization.

that Jessica Licata merely holds title to those Accounts as an agent for her mother.  Citing several cases outside Connecticut, the Trustees argue that equitable ownership of property can be separate from bare legal title and is often accompanied by the equitable owner's intent to shield their assets from creditor attack while continuing to derive the equitable benefit of those assets. Reply 5–6.  In essence, the Trustees, under what they denominate as their "equitable ownership" theory, seek to collapse the many layers of the Licatas' asset-shielding scheme into one single, integrated fraud scheme, of which Jessica Licata was an integral part.  Such an approach is hardly novel: "an allegedly fraudulent conveyance must be evaluated in context; "'[w]here a transfer is only a step in a general plan, the plan must be viewed as a whole with all its composite implications.'"  *Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d. Cir. 1993) (quoting *Pereira v. Checkmate Commc'n Co. (In re Checkmate Stereo & Elec., Ltd.)*, 9 B.R. 585, 612 (Bankr. E.D.N.Y. 1981)); *see also In re HBE Leasing Corp.*, 48 F.3d 623, 638 (2d. Cir. 1995) ("It is well established that multilateral transactions may under appropriate circumstances be collapsed and treated as phases of a single transaction . . . .").  To that end, the Trustees argue that, if Jessica Licata were dismissed from this action, they would have no ability to establish Cynthia Licata's equitable ownership of the Accounts or her liability to the bankruptcy estates.  For these reasons, the Trustees contend that Jessica Licata is a necessary party who must be joined to this action pursuant to Federal Rule of Civil Procedure 19(a).

Federal Rule of Civil Procedure 19, made applicable to this Adversary Proceeding by Federal Bankruptcy Rule of Procedure 7019, governs the required or compulsory joinder of parties and defines those who must be joined as parties to a civil action.  "Rule 19(a) is applicable when nonjoinder would have either of the following effects.  First, it would prevent complete relief from being afforded among those who are parties to the action or, second, the

absentee 'claims an interest relating to the subject of the action and is so situated' that the nonparty's absence from the action will have a prejudicial effect on that person's ability to protect that interest or will 'leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.'" Wright & Miller, 7 Fed. Prac. & Proc. Civ. § 1604 (3d ed.) (quoting Fed. R. Civ. P. 19(a)(1)); *see also In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 743–44 (Bankr. S.D.N.Y. 2008).

Because the Trustees allege an asset-shielding scheme in which Jessica Licata's parents are the equitable owners of the Accounts, Jessica Licata, as the named account holder of record, is required to be joined under Rule 19(a) such that the Court can afford complete relief to the bankruptcy estates. Taking the allegations in the complaint as true (which the Court must do when deciding a motion to dismiss) the Court concludes that Jessica Licata's presence as a defendant in this action is necessary and required. Despite her discrete role, the nonjoinder or dismissal of Jessica Licata would prevent the Court from determining whether James Licata and Cynthia Licata were the equitable owners of the Accounts and whether Jessica Licata should be disposed of her dominion, title, and control of the Accounts. Whether Jessica Licata was merely a conduit of James Licata and Cynthia Licata's broader asset-shielding scheme is, moreover, central to the issue of whether her parents possessed fraudulent intent throughout this decade-long saga of alleged asset-shielding and whether she must suffer personal liability for her role. Thus, Jessica Licata must remain a party to this action.

Moreover, Jessica Licata's inclusion as a party to this action is required as much by common sense as it is by the Federal Rules of Civil Procedure. In support of their contention that Jessica Licata is a necessary party to this Adversary Proceeding, the Trustees submit that, in a legal proceeding seeking to establish the true (e.g., equity) owner of an account and associated

funds and to provide damages and related relief, the account holder of record must be a party to that proceeding.  Reply 6.  The Court wholly agrees.  It would be improper and illogical to dismiss a central party in the Licatas' broader asset-shielding scheme, as it would fundamentally impair the Court's ability to afford complete and necessary relief to the bankruptcy estates.  As such, Jessica Licata must remain a party to this Adversary Proceeding.

## V.   CONCLUSION

For the foregoing reasons, Jessica Licata's Motion to Dismiss Counts Nine, Ten, and Eleven of the Amended Complaint is denied.

**IT IS SO ADJUDGED, ORDERED AND DECREED** at Hartford, Connecticut this 31st day of March 2023.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut